**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

DEANNE W.[1],                                        3:18-cv-00498-BR

        Plaintiff,                            OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

**TIM WILBORN**
Wilborn Law Office
P.O. Box 370578
Las Vegas, NV 89137
(702) 240-0184

        Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1]  In the interest of privacy this Opinion uses only the first name and the initial of the last name of the non-governmental party.  The same designation will be used to identify nongovernmental family members.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JOSEPH J. LANGKAMER**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

      Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Deanne W. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

On July 18, 2012, Plaintiff filed her application for DIB and SSI benefits. Tr. 16, 800.[2] Plaintiff alleges a disability

---

[2] Citations to the official transcript of record filed by the Commissioner on July 20, 2018, are referred to as "Tr."

onset date of March 1, 2012.  Tr. 16, 800.

Plaintiff's application was denied initially on
September 12, 2012, and on reconsideration.  Tr. 16.  An
Administrative Law Judge (ALJ) held a hearing on April 23, 2014.
Tr. 16, 29-69.  Plaintiff and a vocational expert (VE) testified
at the hearing.  Plaintiff was represented by an attorney at the
hearing.

On June 5, 2014, an ALJ issued an opinion in which he found
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 16-27, 800.  Plaintiff requested review by the
Appeals Council.  On November 2, 2015, the Appeals Council
denied Plaintiff's request to review the ALJ's decision.

On January 6, 2016, Plaintiff filed a complaint in this
court (No. 3:16-cv-00020-KI) seeking review of the
Commissioner's decision.

While the case was pending, the parties stipulated to
remand the case for additional administrative proceedings.  On
October 5, 2016, the court remanded the case for further
administrative proceedings.  Tr. 859-61.

On October 5, 2017, following the remand, another ALJ held
further proceedings on Plaintiff's application.  Tr. 800, 822-
46.  Plaintiff and a VE testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On November 28, 2017, the ALJ issued an opinion in which he again found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 800-14. This opinion became the Commissioner's final decision after remand when the Appeals Council declined to assume jurisdiction. *See* 20 C.F.R. § 404.984(c) and (d).

On March 22, 2018, Plaintiff again filed a Complaint in this court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on June 15, 1966. Tr. 812. Plaintiff was forty-five years old on the alleged disability onset date. Tr. 812. Plaintiff has a high-school education. Tr. 812. The ALJ found Plaintiff has past relevant work experience as a house sitter. Tr. 812.

Plaintiff alleges disability due to fibromyalgia, degenerative joint disease of her shoulders, degenerative disc disease of her cervical and lumbar spine, diabetes, obesity, depression, chronic fatigue, and restless leg syndrome. Tr. 70.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 805-11.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere

scintilla [of evidence] but less than a preponderance. *Id.*
(citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's
testimony, resolving conflicts in the medical evidence, and
resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591
(9th Cir. 2009). The court must weigh all of the evidence
whether it supports or detracts from the Commissioner's
decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th
Cir. 2008). Even when the evidence is susceptible to more than
one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012). The court may not substitute its
judgment for that of the Commissioner. *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

## I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA). 20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648
F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also*
*Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*,
648 F.3d at 724.  The criteria for the listed impairments, known
as Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.*

*Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since March 1, 2012, Plaintiff's

alleged disability onset date.  Tr. 803.

At Step Two the ALJ found Plaintiff has the severe impairments of fibromyalgia, degenerative joint disease of the shoulders, degenerative disc disease of the cervical and lumbar spine, and obesity.  Tr. 803.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the Listed Impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 805.  The ALJ specifically found Plaintiff's fibromyalgia does not medically equal the level of severity required by any relevant impairment, including Listing 14.09 for inflammatory arthritis, either singularly or in combination with Plaintiff's other impairments.  Tr. 805.  The ALJ found Plaintiff has the RFC to perform light work.  The ALJ, however, found Plaintiff cannot climb ladders, ropes, and scaffolds; can only occasionally climb ramps and stairs; and can only occasionally stoop, crouch, kneel, crawl, and perform overhead reaching.  Tr. 805.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work.  Tr. 812.

At Step Five the ALJ found Plaintiff could perform other jobs that exist in the national economy such as small-product assembler, laundry folder, and labeler.  Tr. 812-13.

Accordingly, the ALJ found Plaintiff is not disabled. Tr. 813-14.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed at Step Three to find Plaintiff's fibromyalgia meets or equals the Listing requirements, (2) failed to provide clear and convincing reasons for rejecting Plaintiff's testimony, (3) improperly evaluated the medical evidence, (4) improperly rejected lay-witness testimony, and (5) failed to include all of Plaintiff's limitations when he assessed Plaintiff's RFC and posed hypothetical questions to the VE.

**I.    The ALJ did not err when he found Plaintiff's fibromyalgia did not meet or equal Listing requirements at Step Three.**

Plaintiff contends the ALJ's finding at Step Three that Plaintiff's fibromyalgia, either by itself or in combination with other impairments, did not equal Listing 14.09D; is not supported by substantial evidence; and is based on an incorrect legal standard.  Thus, Plaintiff contends the ALJ should have found at Step Three that Plaintiff is presumptively disabled.

The Commissioner, in turn, contends the ALJ's finding is supported by substantial evidence in the record.

**A.    Standards**

As noted, at Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser v. Comm. Social Sec. Admin*, 648 F.3d 721, 724 (9th Cir. 2011).  Step Three "streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background."  *Bown v. Yuckert*, 482 U.S. 137, 153 (1987).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  To *equal* a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment."  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)(emphasis in original).  *See also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2014).

When determining whether a claimant equals a Listing at Step Three, the ALJ "must explain adequately his evaluation

of alternative tests and the combined effects of the impairments."  *Macia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  *See also Murphy v. Comm'r Social Sec. Admin.*, 423 F. App'x 703, 704 (9th Cir. 2011).

**B.   Analysis**

Fibromyalgia (FM) is not a listed impairment.  Social Security Regulation 12-2p, Section VI.C., provides:  "FM cannot meet a listing in appendix 1 because FM is not a listed impairment.  At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."  Listing 14.09D requires:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at a marked level:
>     1. Limitation of activities of daily living.
>     2. Limitation in maintaining social functioning.
>     3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, App. 1, Section 14.09D.

Plaintiff contends her fibromyalgia, either alone or in combination with her other impairments, medically equals Listing 14.09D because her impairments are "medically equivalent

to each diagnostic element" of the Listing and "they result in limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace at the marked level."  Pl.'s Brief at 15.  Plaintiff asserts the ALJ did not adequately explain his finding to the contrary and his determination is not supported by the evidence.

The ALJ concluded:  "Fibromyalgia is not a listed impairment:  however, there is no evidence that it medically equals the level of severity required by any relevant impairment, such as 14.09, pertaining to inflammatory arthritis, when considered alone or in combination with [Plaintiff's] other impairments (S.S.R. 12-2p)."  Tr. 805.  Although the ALJ did not specifically explain his conclusion at Step Three, he continued the sequential analysis and discussed each of Plaintiff's impairments in relation to her limitations as part of his assessment of her RFC.  For example, the ALJ noted Plaintiff has only mild limitations in interacting with others and in concentration, persistence, and pace.  Tr. 804.  The ALJ also noted there was evidence supporting Plaintiff's diagnosis of fibromyalgia, but the examination findings were "largely limited to reports of tenderness, decreased range of motion, and occasional muscle spasms."  Tr. 806.  The ALJ also found subsequent reports showed "no significant findings, such as

focal neurologic deficits, gait difficulties, substantial sensation or strength deficits." Tr. 807. The ALJ also found Plaintiff's activities of daily living "are not entirely consistent with the degree of debilitation" she alleged and "are not consistent with debilitating pain and fatigue." Tr. 809-10. The ALJ further relied on the opinions of state-agency medical consultants who found Plaintiff could perform light work with certain limitations. Tr. 810. The ALJ ultimately concluded Plaintiff's fibromyalgia was a medically-determinable, severe impairment, and the ALJ accounted for Plaintiff's limitations by restricting her to only light work with various postural limitations. Tr. 803, 805-07.

On this record the Court concludes the ALJ did not err at Step Three because the medical records do not reflect Plaintiff meets the requirements of Listing 14.09 and the ALJ's determination as to Plaintiff's limitations is supported by substantial evidence in the record.

**II.  The ALJ did not err when he found Plaintiff's testimony was not fully credible.**

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant is not required to show that her "impairment could reasonably be expected to cause the severity of the symptom [she] has alleged; [she] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Id.*

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B.  Analysis**

The ALJ discounted Plaintiff's testimony regarding her symptoms on the ground that Plaintiff's testimony was not consistent with the medical evidence or her activities of daily living. Tr. 806, 809.

Plaintiff alleges she is unable to work due to her fibromyalgia and shoulder and back pain. Plaintiff testified in her initial hearing that she has only about "two good hours a day," experiences pain in the morning, and can walk only three or four blocks. Tr. 43, 55, 58.

The ALJ, however, found Plaintiff's treatment and activities did not support Plaintiff's testimony regarding the severity of her impairments. The ALJ noted:

The record references activities that are not
entirely consistent with the degree of
debilitation alleged by [Plaintiff] and suggest
greater functioning.  For example, in August
2012, [Plaintiff] reported that she cared for her
family and one client, for whom she drove,
assisted in shopping and showering, swept and
vacuumed once a week, cleaned the bathroom
weekly, and helped with paperwork and bills.
[Plaintiff] reported that she prepared meals
daily and did household chores including wiping
counters, organizing things, light dusting, and
picking blueberries.  She said that she went out
daily, drove, and was able to go out alone.  She
said that she shopped twice a week, once for her
family and once for her client ([Tr. 266-73]).
In December 2014, [Plaintiff] reported that
despite some pain issues, she had been doing
well, was involved with family activities, had
joined the Moose Lodge, and was going to take
classes in aromatherapy and yoga.  ([Tr. 985]).
As noted above, [Plaintiff] testified that she
has done a little work pet sitting and house
sitting.  [Plaintiff's] activities and ability to
provide care giving services, when considered in
connection with the medical evidence of record,
are not consistent with the debilitating pain and
fatigue she has alleged."

Tr. 809-10.

The Ninth Circuit has noted even when a claimant's

activities "suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent

that they contradict claims of a totally debilitating

impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.

2012).

On this record the Court concludes the ALJ did not err

when he discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**III. The ALJ properly evaluated the medical evidence.**

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for rejecting the medical opinion of Tina Galey, Plaintiff's treating nurse practitioner (NP).

### A.    Standards

Medical sources are divided into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513, 416.913. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). Medical sources classified as "other sources" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. 20 C.F.R. §§ 404.1513(d), 416.913(d).

With respect to "other sources," the Social Security Administration notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and

> evaluation functions previously handled primarily
> by physicians and psychologists. Opinions from
> these medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated on
> key issues such as impairment severity and
> functional effects, along with the other relevant
> evidence in the file.

*SSR* 06-03p, at *3. Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the claimant, the number of times and frequency that the source has seen the claimant, the consistency of the source's opinion with other evidence in the record, the relevance of the source's opinion, the quality of the source's explanation of his opinion, and the source's training and expertise. SSR 06-03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-6.

The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6. "The ALJ may discount testimony from . . . 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r Soc. Sec.*

*Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

    **B.    Analysis**

        NP Galey is an "other source" of medical opinion.
NP Galey has treated Plaintiff since November 2008.  Tr. 770.
Based on Plaintiff's diagnosis of cervical, thoracic, and/or
lumbosacral radiculitis; generalized osteoarthritis;
fibromyalgia; depressive disorder; and diabetes, NP Galey stated
in her Declaration on April 22, 2014, that Plaintiff "would not
be able to perform any work that required any lifting[;] . . .
is also significantly limited in her ability to sit for any
length of time, and would have to frequently change positions[;]
. . . is significantly limited in her ability to stand any
length of time[;] . . . would not be able to climb, stoop,
kneel, crouch or crawl[; and] . . . [h]er symptoms would impact
her ability to focus and concentrate on a consistent basis, even
with simple work."  Tr. 771.  NP Galey also opined Plaintiff
would "miss at least three day[s] a month from any competitive
work."  Tr. 772.

        On March 30, 2015, NP Galey filled out a form for the
Oregon Department of Human Services.  Tr. 1046.  Although she
indicated Plaintiff could not lift more than five pounds and
could not push, pull, reach, carry, or grab due to her cervical
stenosis and lumbar disc disease, NP Galey noted Plaintiff could

walk and sit without limitation.  Id.

        The ALJ gave "some, but not great weight" to
NP Galey's opinion and included some of the postural limitations
in Plaintiff's RFC.  Tr. 805, 810.  The ALJ, however, discounted
NP Galey's other limitations on the grounds that they were
"vague," not supported by "specific information" or medical
data, and "inconsistent" with medical records.  Tr. 810.  The
ALJ also noted the limitations suggested by NP Galey were
contradicted by and inconsistent with Plaintiff's reported daily
activities.

        An ALJ may discount an opinion when it is "brief,
conclusory, and inadequately supported by clinical findings."
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  *See
also* 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3).  An ALJ may
also discount an opinion "if it is based to a large extent on a
claimant's self-reports that have been properly discounted as
incredible."  *Tommasetti v. Astrue*, 553 F.3d 1035, 1041 (9th
Cir. 2008).

        As noted, the Court has concluded the ALJ properly
discounted Plaintiff's testimony.  On this record the Court
concludes the ALJ provided legally sufficient reasons for
discounting NP Galey's opinion because the ALJ provided legally
sufficient reasons for doing so.

**IV. The ALJ provided germane reasons for discounting lay-witness testimony.**

Plaintiff contends the ALJ erred when he failed to provide reasons that are germane to the lay-witness statement of Cindy Duncan, Plaintiff's friend, regarding Plaintiff's limitations.

**A. Standards**

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis.

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

## B.   Analysis

In a Declaration dated May 28, 2015, Duncan stated she has known Plaintiff for approximately eleven years, has contact on a daily basis, and sees Plaintiff face-to-face at least four days a week.  Tr. 309.  Duncan stated Plaintiff always has had problems with her back, and Plaintiff told Duncan her pain and symptoms increased following surgery in 2004.  Tr. 309.  Duncan observed Plaintiff is "not able to lift her arms above her head, and has difficulty lifting any object of significant weight." Tr. 310.  Duncan also noted Plaintiff's symptoms "slow her down with everyday activities," "there are days when her symptoms prevent her from getting out of bed . . . a couple of times a week," and this "would force her to 'call in sick' for any job." Id.  Duncan stated Plaintiff has trouble with household chores and "struggle[s] with her ability to concentrate."  Tr. 310-11.

Plaintiff contends this record supports her own testimony and that the ALJ failed to offer a germane reason for rejecting Duncan's testimony.  Thus, Plaintiff asserts the ALJ could have reached a different conclusion regarding Plaintiff's disability if he had properly credited Duncan's testimony.

The ALJ gave some weight to Duncan's statements. Tr. 811-12.  The ALJ concluded, however, that Duncan's statements were "not entirely persuasive" because the extent of

symptoms and limitations Duncan noted "are not consistent with or corroborated by the medical evidence, which contains generally modest examination findings and does not reflect significant difficulties with cognition." Tr. 812. The ALJ also noted Duncan's statements regarding Plaintiff's absences from work appeared to be based on Plaintiff's subjective reports. Tr. 812.

On this record the Court concludes the ALJ provided germane reasons for discounting the lay-witness statements of Duncan.

## V. The ALJ included all of Plaintiff's limitations in his assessment of Plaintiff's RFC and in his hypotheticals posed to the VE.

Plaintiff contends the ALJ failed to include all of Plaintiff's limitations when determining Plaintiff's RFC and failed to include those limitations in the hypotheticals posed to the VE.

As noted, the Court has determined the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints about her symptoms and properly evaluated the medical evidence. Accordingly, the Court concludes the ALJ did not err by failing to include other limitations in his assessment of Plaintiff's RFC or in the hypotheticals posed to the VE.

### CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 5th day of February, 2019.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge